## World's Columbian Exposition v. Pasteur-Chamberland Filter Co.

1. DAMAGES—*Loss of Profits from Advertising.*—Evidence of witnesses qualified by special experience and knowledge, to give their opinions as to the value of advertising spaces, is competent in view of the uncertainties of such a case.

2. MEASURE OF DAMAGES—*Matters Having no Market Value.*—In suits involving matters having no general market value, the measure of damages to be recovered is the value as shown by persons whose skill and experience enabled them to testify to such values.

3. REVOCATION—*Not Allowable After Approval.*—Where, under a contract, a party is to be permitted to place signs at drinking stations advertising a water filter, the general appearance and character of such signs being subject to the approval of the party of the first part, such party, after having approved the same, can not revoke his approval.

**Assumpsit.**—Breach of contract for advertising space. Trial in the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the October term, 1898. Affirmed. Opinion filed March 30, 1899.

**Statement of the Case.**—Just prior to the commencement of the World's Fair in Chicago, appellant and appellee

entered into a contract by which appellant agreed to pay to appellee, for the use of not more than one hundred free drinking stations or fountains at the fair to be supplied by appellee, the sum of $100 each, the stations to be supplied by appellee with reservoirs or tanks, faucets, drips, wastes and other necessary parts, and also as many Pasteur Germ Water Filters as might be necessary for supplying the required amount of drinking water at each of the stations, and also to care for and maintain in good working order all said stations from May 1 to November 1, 1893.

There are numerous provisions in the contract, but the following only is material in this case, viz.:

" Said party of the first part promises and agrees to permit said party of the second part to place signs at each of said drinking stations advertising the Pasteur Filter, its construction, mode of cleaning and maintaining same, and the address of said party of the second part; the general appearance and character of said signs being subject to the approval of said party of the first part."

The stations were erected and maintained by appellee as agreed, and paid for by appellant. Upon each side of each filter there was placed by appellee, in large and conspicuous letters, which remained throughout the exposition, the following sign, viz.:

" Free drinking water station No. 6. This water is filtered by (in large letters) the Pasteur Germ Proof Filter, and deprived of every dangerous material, but retains all of its natural salts and gases. The Pasteur is the only filter that is indorsed by all prominent scientists. Manufactured by the Pasteur-Chamberland Filter Company, Dayton, Ohio. Eastern Department, No. 4 West 28th street, New York. Chicago, 34 Congress street."

Between the first and middle of July, 1893, appellee placed on each tank two printed notices on cardboard, framed with glass, which described the method of manufacturing and operating the Pasteur Filter, its effect upon the water filtered through it, etc., etc., and stating " it is the only perfect filter, as it is the only germ proof filter made."

About the middle of each of these notices (or signs, as

96 APPELLATE COURTS OF ILLINOIS.

VOL. 82.] World's Col. Ex. v. Pasteur-Chamberland Filter Co.

they are frequently called in the record by witnesses and counsel) and a part of the same, in large capitals and quite conspicuous, appeared the following :

" All water as it comes from springs, wells, cisterns, or streams, contains germs and other matters in suspension. A single disease germ may, under favorable conditions, become dangerous."

A copy of these notices or signs was submitted to and approved by Mr. Burnham, the chief of construction and director of works of appellant, about the last of May or first of June, 1893.

The notices were on the tanks when appellant paid appellee the agreed price therefor, and so remained until about the middle of August, 1893, when complaint was made to appellant that these notices were objected to by the Hygeia Waukesha Water Co., and were a violation of its contract with appellant to furnish water at the fair. Appellant then, through its engineer, notified appellee to remove the objectionable notices. Appellee failed to comply with this notification, and about ten days thereafter, appellant caused all the objectionable notices to be removed, but they have never been delivered nor tendered to appellee.

Appellee brought suit for a breach of the contract, claiming as damages the value of the signs and for being deprived of the privilege of advertising its filter under the contract. The declaration is a special count on the contract, and the common counts. The general issue was pleaded. A trial before the court and a jury resulted in a verdict and judgment for appellee of $2,500, from which the appeal is taken.

Appellant asked, but the court refused to give, the following instructions, which, for convenience of reference, are numbered 1, 2, 3 and 4, viz. :

" 1. If you find from the evidence that the plaintiff company could have kept its signs up by striking out the following words, ' all water as it comes from springs, wells, cisterns or streams, contains germs and other matter in suspension; a single disease-germ may, under favorable conditions, become dangerous,' then the defendant is not liable for any damage for loss of advertising.

2.  The only portion of the contract introduced in evidence, which gives to the plaintiff the right to place signs, is the following: ' Said party of the first part promises and agrees to permit said party of the second part to place signs at each of said drinking stations advertising the Pasteur filter, its construction, mode of cleaning and maintaining the same, and the address of said party of the second part; the general appearance and character of said signs being subject to the approval of said party of the first part.'

The court instructs you that under this contract the plaintiff had no right to put up any sign which contained any words or language reflecting upon the Waukesha or Hygeia Company, or upon any company claiming to furnish spring water, and if you find from the evidence that the sign in question contained the following language: 'All water as it comes from springs, wells, cisterns or streams, contains germs and other matter in suspension; a single disease germ may, under favorable conditions, become dangerous.' and that such language was a reflection upon spring water and a reflection upon the water claimed to be furnished by the Waukesha or Hygeia Company, then the court instructs you that the plaintiff had no right to place and maintain said signs, and the defendant company had the right to order them down; and if the plaintiff company refused to take them down, the defendant company could remove them without incurring any liability to the plaintiff for loss of advertising space or privilege.

3.  You are instructed that the sign in question contains the following language : ' All water as it comes from springs, wells, cisterns, or streams contains germs and other matter in suspension; a single disease germ may, under favorable conditions, become dangerous.' That language does not fall within the terms of the contract, and the plaintiff company had no right under its contract with the World's Columbian Exposition to insert those statements in its sign.

4.  You are instructed that even if you should find that the general appearance and character of said signs was approved by the defendant, or any of its officials, such approval does not bind the defendant as to any language in the sign which was a reflection upon the water furnished by other water companies, and the defendant company had the right, upon being notified, or upon discovering that the signs contained statements which reflected upon the water

98 APPELLATE COURTS OF ILLINOIS.

VOL. 82.] World's Col. Ex. v. Pasteur-Chamberland Filter Co.

furnished by other companies, to order the objectionable statements removed."

WALKER & EDDY, attorneys for appellant, contended that the injury suffered, if any, was a loss of such profits as would have resulted from advertising—a matter of mere conjecture, depending upon the number who might read and act upon the advertisement. Petrie v. Lane, 58 Mich. 528, 25 N. W. Rep. 504; Fitzsimmons v. Chapman, 37 Mich. 139; McKinnon v. McEwan, 48 Mich. 106, 11 N. W. Rep. 828; Allis v. McLean, 48 Mich. 428, 12 N. W. Rep. 640; Manufacturing Co. v. Pinch, 91 Mich. 156, 51 N. W. Rep. 930; Davis v. Davis, 84 Mich. 324, 47 N. W. Rep. 555. It has been held in several cases the loss of profits may be recovered where the loss and the amount can be shown with certainty. But in this case the effect of this failure to advertise is most uncertain, and the court was correct in holding that such damages were not recoverable. Sedgwick on Damages, Sec. 170.

In a suit for breach of contract the court will not, for the measure of damages, apply a rule which would give plaintiff a greater compensation for a breach of the contract than he could receive had it been performed. Olmstead v. Burke, 25 Ill. 86.

It is a rule of pleading that where the damages sustained have not necessarily accrued from the act complained of, the plaintiff must state the particular damages he has sustained, to prevent surprise, or he will not be allowed to give evidence in respect thereto, and not then if remote.

So in an action brought to recover damages through failure to repair certain machinery. The trial resulted in verdict for plaintiff, which was reversed by the Supreme Court, the court saying:

This court has decided, in cases kindred to this, that the measure of damages is not prospective gains unless there should be shown outstanding contracts to be performed by the machinery to be furnished. There is no averment in the declaration of such, the only averment being that the

plaintiffs were deprived of the use of the still for two months, during which time they might and would have manufactured large quantities of alcohol, from which they would have derived great gains. This is all prospective, and too remote to be an element of damages. Frazer et al. v. Smith, 60 Ill. 145.

Calculations as to prospective profits in other enterprises which a party would have engaged in, had his contract with a defendant been fulfilled, are altogether too remote to form the basis of damages occasioned by the breach of such contracts. Consumers Pure Ice Co. v. Jenkins et al., 58 Ill. App. 519; Squire v. Western U. T. Co., 98 Mass. 232.

TUTTLE & GRIER and MONK & ELLIOTT, attorneys for appellee.

In an action for a breach of contract plaintiff is entitled to recover all such damages as are the certain result of the breach, even though such damage be uncertain in amount. Meylert v. Gas Consumers Benefit Co., 26 Abb. N. C. 263.

The difficulties involved in estimating the injury done to an unknown author by a breach of a contract to publish his first book, do not preclude a recovery by him, or require the jury to render a verdict for merely nominal damages. Bean v. Carleton, 51 Hun, 318.

The measure of damages for a breach of a contract to deliver a note of a third person in payment for a chattel, is not the value of the chattel at the time of the sale, but the value of the note. Bignell v. Waterman, 5 R. I. 43.

On exchange of property for land warrants the damages for a failure to deliver the warrants is measured by the value of the land warrants, and not the value of the property given in exchange for them. Rayner v. Jones, 90 Cal. 78.

Where a railroad company in part consideration for a right of way granted to it, agrees to fence both sides of its road through the land granted, the measure of damages for a breach of such agreement is what it would reasonably cost the plaintiff to construct the fences. Taylor v. Railroad Company, 56 Cal. 317; Railroad Company v. Wray, 52 Ind. 578; Railroad Company v. Lurton, 72 Ill. 118.

100    APPELLATE COURTS OF ILLINOIS.

VOL. 82.]    World's Col. Ex. v. Pasteur-Chamberland Filter Co.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

Appellant claims, first, that the advertising privilege for which a recovery is sought, is not susceptible of being measured in damages, and, second, that appellant was entirely warranted, under the evidence, in removing the signs.

Under the first claim, it is argued that the trial court erred in the admission of the evidence of certain experts, two advertising solicitors, who testified as to the value of the spaces occupied by the signs in question as an advertising privilege, one testifying that these spaces were worth $5,000 per month, and the other $10,000 per month; that appellant did not sell advertising space, but permitted exhibitors, under certain conditions, to describe the goods they had on exhibition. No serious contention is made, nor could there be, that the witnesses were not qualified by special experience and knowledge, to give their opinions as to the value of the space. Counsel say, " the vital objection to this testimony is, that it is an attempt to apply the wrong measure of damages," and the court proceeded upon the theory that the question was the "market value of such advertising." Whatever may have been the theory of the learned trial judge, we are of opinion there was no error in the admission of this evidence.

Appellee had the right, under its contract, to advertise its filter at each of the stations by signs, and the character of such signs was subject to the approval of appellant. It had submitted the signs for that purpose to appellant, and they had been approved. It is true, on the matter of their approval there is a conflict in the evidence, but we are of opinion the weight of it is that the signs were approved. No useful purpose would be subserved by discussing it. Appellant wrongfully, as will be later seen, deprived appellee of the right to maintain these signs at the several stations for a period of more than two months of the fair, during which there was an attendance of more than 13,500,000 persons.

Can appellant deliberately violate its contract and then

say to appellee that because there is no way of proving the damages by reason of such breach, except by the opinions of experts as to the value of space for advertising purposes, it is without remedy? We think not, unless such is the inflexible rule of law. The opinions of experts are taken by the courts by reason of the necessity of the particular cases, in many matters of almost, if not quite, as great uncertainty as appellee's damages in this case, viz., as to the market price or value of houses and goods destroyed by fire, the value of personal services in the varied employments of business and professional life, including those of architects, physicians, brokers and attorneys, the values of annuities and life estates dependent upon the habits, health, physical condition and prospects of life of particular persons. Rogers on Expert Test., Sec. 156, *et seq.;* 1 Wharton on Evid., Sec. 446, *et seq.*

In Meylert v. Gas Consumers Benefit Co., 26 Abbott's New Cases, 262, a physician was allowed to recover, on breach of a contract, what he might have earned as a physician during the time he was occupied in the performance of his part of the contract. Just what the evidence on which the allowance was based was, does not appear from the report of the case, except that it appeared he had averaged a certain income per month. This must have been for some past time, and was necessarily of an uncertain nature. The court said: "The plaintiff is entitled to recover all such damages as are the certain result of the breach, even though such damage be uncertain in amount."

See also the cases cited in the opinion of the court, and especially Taylor v. Bradley, 39 N. Y. 129, 144, in which a recovery was allowed for the breach of a contract which allowed the plaintiff to occupy and work a farm for three years, each party to furnish certain stock, tools, etc., and the plaintiff to have certain specified supplies for his family, and all proceeds to be divided equally between the parties. It was held *the value of the contract* was the proper measure of damages, though it could not be told whether the plaintiff would realize anything by performing it. The court,

**102** **APPELLATE COURTS OF ILLINOIS.**

VOL. 82.] World's Col. Ex. v. Pasteur-Chamberland Filter Co.

after enumerating the difficulties of making the proof, say: "The administration of justice frequently proceeds with reasonable certainty of accomplishing what is right, or as nearly right as human efforts may attain, in the face of similar difficulties, and it does so by making the experience of mankind, or rather, the judgment which is founded on such experience, the guide," and hold the value of the contract may be proved by the opinions of persons of experience and observation given in view of all the uncertainties of the case, and that the credibility of such evidence may be tested by cross-examination. Of like import is Schell v. Plumb, 55 N. Y. 592, in which plaintiff was allowed to recover, for the breach of a contract to support her for life, damages for her future support and maintenance, which, of course, depended upon her age, health, probabilities of life, and numerous other uncertainties, including the value of such services as she might in the future perform. Also Rhodes v. Baird, 16 Ohio St. 573–81, in which it was held that the market value of the use of premises was the proper measure of damages for the breach of a contract to make a lease of the same for a peach orchard to be grown, subject to the performance of the contract by the plaintiff, and if it had no general market value, its value could be shown by persons whose skill and experience enabled them to testify to such value, in view of the hazards and chances of the business to which the land was to be devoted.

Also in R. R. Co. v. Douthet, 88 Pa. St. 243, in which it was held there could be a recovery against the railroad company for the breach of its contract to give plaintiff a free pass over its road for himself and family for his lifetime; that the proper measure of damages was the value of such a pass. What the nature of the evidence to prove such value is, does not fully appear, but necessarily it must have been very uncertain.

Also in Llewellyn v. Rutherford, 10 L. R. C. P. 456–68, in which, for the breach of a covenant in a lease of a public house, the value of the good will was held to be the measure of damages, and that it should be ascertained by the evidence of persons accustomed to the trade of valuing.

We regard the cases cited by appellant as to the recovery of possible future profits, as not applicable, and the case of Stevens v. Yale, 72 N. W. Rep. 5, on which special reliance is placed, is of the same nature. The court say: "The injury suffered, if any, was a loss of such *profits as would have resulted* from advertising." The case at bar is to recover for the value of a space, which appellee had the right to use, of which appellant wrongfully deprived it.

We conclude that the evidence, though to a degree uncertain, as is generally the case on most questions of value of property, was competent and properly admitted. As to the second contention of appellant, that it was warranted in removing the signs, we have seen there was a conflict in the evidence as to whether they were approved by appellant, and that the weight of the evidence is that they were so approved. The only remaining question made is as to the right of appellee, under its contract, to have maintained the signs.

We are clearly of opinion that appellant having approved the signs, could not revoke such approval, and that this gave appellee the right to maintain them, including the alleged objectionable parts. We are, moreover, of opinion that the alleged objectionable part of the signs was legitimate advertising of the Pasteur Filter, to which appellee was entitled under its contract, especially so after the signs had been approved, and therefore all appellant's refused instructions, being based upon the theory that the objectionable words were a violation by appellee of its contract, were properly refused.

The judgment is affirmed.